UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| RICHARD WOLF GUTS,<br><br>                Plaintiff,<br><br>vs.<br><br>MR. M COUNTY, Case Manager at USP Tucson AZ, in his indiviaual and offical capacity; DR. HAAR, Chief Psychologist at Springfield, MO FMC, in his or her indiviaual and offical capacity; DR HAMPTON, Psychologist at Med Cntr Springfield, MO, in his or her indiviaual and offical capacity; and FBOP WOOT, Staff Employees at Central Office Washinton DC, in its indiviaual and offical capacity,<br><br>                Defendants. | CENTRAL DIVISION<br><br>3:24-CV-03007-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING DISMISSING CASES |
| RICHARD WOLF GUTS,<br><br>                Plaintiff,<br><br>vs.<br><br>MR. M COUNTY, Case Manager at US Penitentiary Tuscon AZ; and BOP FMC PHD'S, Dr at Springfield Missori,<br><br>                Defendants. | CENTRAL DIVISION<br><br>3:24-CV-03009-RAL |
| RICHARD WOLF GUTS,<br><br>                  Plaintiff,<br><br>vs.<br><br>MR. M COUNTY, case manager at USP Tucson Arizona in his individual and official capacities; FBCP DOCTORS, Springfield FMC in official capacity; and LIANTANDT SHIAZ, Liantandt at USP Tucson Arizona,<br><br>                Defendants. | SOUTHERN DIVISION<br><br>4:24-CV-04054-RAL |

| | |
|---|---|
| RICHARD WOLF GUTS,<br><br>                    Plaintiff,<br>vs.<br><br>MR. M COUNTY, Case Manager at USP A.Z. in individual and official capacity; MR. H SHIED, USP lieutenant USP Tucson A.Z in official capacity; FBCP PHD'S, Psychiatrists Springfield, MO FMC in official Capacity; and FBCP US DOJ, Doctors at FMC Springfield, Mo in individual and official capacity,<br><br>                    Defendants. | WESTERN DIVISION<br><br>5:24-CV-05015-RAL |

Currently pending before this Court are Plaintiff Richard Wolf Guts' four pro se complaints. Wolf Guts v. County, 3:24-CV-03007-RAL Doc. 1; Wolf Guts v. County, 3:24-CV-03009-RAL Doc. 1; Wolf Guts v. County, 4:24-CV-04054-RAL Doc. 1; Wolf Guts v. County, 5:24-CV-05015-RAL Doc. 1.[1] Wolf Guts has previously filed multiple civil cases with this Court. See 3:21-CV-03026-RAL; 4:21-CV-04213-RAL; 4:21-CV-04214-RAL; 4:21-CV-04215-RAL; 3:21-CV-03028-RAL; 5:22-CV-05009-RAL. In the order dismissing Wolf Guts' prior civil cases, this Court provided a thorough background of his 2017 criminal conviction in the District of South Dakota, his later criminal conviction in the District of Arizona, and his subsequent civil commitment in the Western District of Missouri. 3:21-CV-03026-RAL Doc. 22; 4:21-CV-04213-RAL Doc. 11; 4:21-CV-04214-RAL Doc. 8; 4:21-CV-04215-RAL Doc. 8; 3:21-CV-03028-RAL Doc. 7; 5:22-CV-05009-RAL Doc. 9.[2] Wolf Guts is still civilly committed to the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri. 3:24-CV-03007-RAL

---

[1] This Court will refer to documents in Wolf Guts' current and prior cases by the case number followed by the docket number.

[2] Because an identical order was entered in each of Wolf Guts' prior cases, this Court will only cite to one of his prior cases for any other references to the prior order.

2

Doc. 1 at 1, 8–9; 3:24-CV-03009-RAL Doc. 1 at 1, 8–9; 4:24-CV-04054-RAL Doc. 1 at 1, 8–9; 5:24-CV-05015-RAL, Doc. 1 at 1, 8–9.

I.   **Motions for Leave to Proceed in Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). Wolf Guts' financial affidavits and trust account reports (3:24-CV-03007-RAL Docs. 2, 3; 3:24-CV-03009-RAL Docs. 2, 3; 4:24-CV-04054-RAL Docs. 2, 3; 5:24-CV-05015-RAL Docs. 2, 5), reveal that Wolf Guts has insufficient funds to pay the filing fees. Thus, Wolf Guts' motions for leave to proceed in forma pauperis (3:24-CV-03007-RAL Doc. 2; 3:24-CV-03009-RAL Doc. 2; 4:24-CV-04054-RAL Doc. 2; and 5:24-CV-05015-RAL Doc. 2) are granted.[3]

---

[3] Because "a civilly committed plaintiff does not qualify as a 'prisoner'" under the Prison Litigation Reform Act, Pendleton v. Sanders, 565 F. App'x 584, 584 (8th Cir. 2014) (per curiam), this Court does not assess an initial partial filing fee against Wolf Guts. See also Kolocotronis v. Morgan, 247 F.3d 726, 728 (8th Cir. 2001) (explaining that "the detailed inmate-account procedures of § 1915" do not apply to a civilly committed plaintiff in an action under 42 U.S.C. § 1983).

## II.     1915 Screening

Wolf Guts' handwriting is difficult to decipher, and his filings are illegible in some places. This Court recites the comprehensible facts from Wolf Guts' four pending and factually-overlapping complaints.

### A.     Factual Background as Alleged in Wolf Guts' Complaints

#### 1.     3:24-CV-03007-RAL

In 3:24-CV-03007-RAL, Wolf Guts alleges that Case Manager Mr. M. County at United States Penitentiary - Tucson (USP Tucson), in Arizona, assaulted him and fractured his nose. 3:24-CV-03007-RAL Doc. 1 at 2. Wolf Guts claims that County headbutted him in the nose because he would not accept a deal to keep quiet about heroin and K2 being trafficked into USP Tucson. Id. at 4. He also appears to allege that the other defendants aided and abetted because his fractured nose was kept secret and not reported to federal law enforcement. Id. at 5–6.

Wolf Guts claims that USMCFP Chief Psychologist Dr. Haar and USMCFP Psychologist Dr. Hampton[4] kidnapped, abducted, and entrapped him. Id. at 2, 5. Wolf Guts was to be released on May 21, 2019. Id. at 5. But Dr. Haar and Dr. Hampton "illegally committed" Wolf Guts, which he claims was double jeopardy because he was forced to serve more time at USMCFP. Id. He also claims that defendants violated his right to compassionate release under 18 U.S.C. §§ 4205 and 4146. Id. He alleges that Federal Bureau of Prisons (BOP) United States Department of Justice (DOJ) at the Central Office in Washington D.C. approved holding Wolf Guts in custody after his May 2019 projected release date. Id. at 2. He alleges that defendants should be charged

---

[4] Wolf Guts also alleges that Dr. Turner was involved, but Dr. Turner is not named as a defendant. See 3:24-CV-03007-RAL Doc. 1 at 1, 5.

with aiding and abetting, obstruction of justice, attempted murder, and conspiracy to commit murder. Id. at 5–6.

He sues all defendants in their individual and official capacities. Id. at 2. Wolf Guts requests for his claim related to his fracture nose that the threat be removed and $350,000,000. Id. at 4, 7. He also requests to be released from the USMCFP. Id. at 7. He asks for money damages because he was kept past his projected release date of May 21, 2019. Id.

2.      3:24-CV-03009-RAL

In 3:24-CV-03009-RAL, Wolf Guts alleges that USP Tucson Case Manager Mr. M County assaulted him and fractured his nose. 3:24-CV-03009-RAL Doc. 1 at 2. Wolf Guts allegedly learned of heroin, K2, and other synthetic substances being smuggled into USP Tucson. Id. at 4. He claims that County attempted to keep him quiet about prison staff smuggling drugs. Id. When Wolf Guts got up to try to report the drugs, County slammed him into the wall. Id. County put handcuffs on Wolf Guts and transported him to the segregated housing unit. Id. County headbutted Wolf Guts, which fractured Wolf Guts' nose. Id.

Wolf Guts' projected release date was May 21, 2019. Id. at 5. He claims that medical practitioners[5] conspired to say that he was mentally ill to send him to the USMCFP, instead of releasing him, which he claims was kidnapping, entrapment, and double jeopardy. Id. at 2, 5. He also alleges that these defendants knew of his fractured nose and his cut from a lieutenant's knife. Id. at 5. He alleges that doctors falsified information. Id. Wolf Guts claims that he has been imprisoned for longer than his sentence. Id. Wolf Guts asked a doctor if he could be released to return to his family in South Dakota. Id. at 6. He claims that the doctors discriminated against

---

[5] Wolf Guts specifically mentions Dr. Mstynor, Dr. Hampton, Dr. Harr, and Dr. Licta, but he has not named these doctors as defendants. See 3:24-CV-03009-RAL Doc. 1 at 2, 5.

him in violation of the First Amendment because they would not release him to live with his family and so that he could attend a sun dance ceremony. Id. at 5–6.

Wolf Guts sues defendants in their individual and official capacities. Id. at 2. He seeks $350,000,000 in damages for his fractured nose. Id. at 7. He seeks $350,000 for conspiracy, $350,000 for kidnapping, and $350,000 for actions in the USMCFP system. Id. He also asks to press charges. Id. Any further relief Wolf Guts requests is illegible.

### 3. 4:24-CV-04054-RAL

In 4:24-CV-04054-RAL, Wolf Guts alleges that USP Tucson Case Manager Mr. M County assaulted him and fractured his nose. 4:24-CV-04054-RAL Doc. 1 at 2, 4. Wolf Guts learned that the cartel was trafficking drugs—including heroin, K2, spice, and other synthetic substances—to USP Tucson and selling to inmates. Id. at 4. County warned him to keep quiet. Id. When Wolf Guts did not keep quiet, County headbutted him, which fractured his nose. Id.

On June 12, 2018, USP Tucson Lieutenant Shield and another staff member came at Wolf Guts and started punching him. Id. at 6. One officer tried to put Wolf Guts in a chokehold. Id. Shield grabbed his pocketknife and screamed that he knew where to cut Wolf Guts. Id. Shield cut Wolf Guts in his left knee with the pocketknife. Id. at 2, 6. Wolf Guts alleges that he had a cut on his stomach and left knee. Id. at 6. He claims that doctors were prejudiced and unprofessional and engaged in racial discrimination. Id.

Wolf Guts alleges that USMCFP doctors illegally seized, entrapped, and kidnapped him around his projected release date. Id. at 2, 5. He claims that he was held in prison since May 21, 2019. Id. Any other facts in Wolf Guts' complaint about this claim are illegible.

Wolf Guts sues County in his individual and official capacities and BOP Doctors in only their official capacities. Id. at 2. He does not specify in which capacity he sues Shield.[6] Id. He claims that defendants violated his rights under the Eighth Amendment. Id. at 7. Wolf Guts requests $350,000,000 and asks to be released from USMCFP. Id. He asks for an additional $350,000,000 because he has served a false prison sentence. Id. He asks that charges be brought against defendants. Id. Any further relief Wolf Guts seeks is illegible.

4.      5:24-CV-05015-RAL

On June 12, 2018, Wolf Guts was in the special housing unit at USP Tucson when Lieutenant Shield and officers came to his cell and forced Wolf Guts to cuff up. 5:24-CV-05015-RAL Doc. 1 at 4. Because Wolf Guts did not want to cuff up, lieutenants and officers swarmed his cell and threw punches at him. Id. Wolf Guts said that he would cuff up, but an officer began to choke Wolf Guts. Id. Shield pulled out his pocketknife. Id. Wolf Guts said that he would cooperate. Id. Shield cut Wolf Guts twice on the stomach and once on his left knee. Id. Wolf Guts had told federal employees that there was a drug conspiracy at USP Tucson, and he appears to allege that Shield cut him because of discrimination and retaliation due to his indictment and because he reported the conspiracy. Id.

Wolf Guts alleges that BOP psychiatrists and DOJ doctors[7] falsified statements to say that he was severely mentally ill and aided and abetted each other. Id. at 5. He claims that because of the defendants' actions he was housed at a facility when Shield cut him with a pocketknife and the

---

[6] For the sake of completeness under S.A.A. v. Geisler, 127 F.4th 1133, 1138–40 (8th Cir. 2025) (en banc), this Court will liberally construe Wolf Guts' complaint to allege claims against Shield in his individual and official capacities because he seeks money damages and injunctive relief. 4:24-CV-04054-RAL Doc. 1 at 7.
[7] Wolf Guts specifically mentions Dr. Mietynor, Dr. Hampton, Dr. Harr, and Dr. Lichta, but these doctors are not named as defendants in his complaint. 5:24-CV-05015-RAL Doc. 1 at 2, 5.

7

doctors lied about his fractured nose caused by USP Tucson Case Manager Mr. M County. Id. He alleges that the doctors filed false statements to have him incarcerated past his projected release date and obstructed justice. Id. He also claims that defendants will not prosecute the individuals who violated his rights. Id.

Wolf Guts alleges that he was kidnapped, abducted, and entrapped because he was in BOP custody past his release date, May 21, 2019. Id. at 6. Wolf Guts was sentenced to twenty-seven months' imprisonment. Id. He claims that he was forced to serve a false life sentence because he was kept against his will after his release date, which he claims was double jeopardy and violated his right to due process. Id. He claims that he was discriminated against in the BOP system. Id. He alleges that false statements were given to keep him at the USMCFP. Id.

Wolf Guts sues County, the BOP, and the DOJ in their individual and official capacities. Id. at 2. He sues BOP Phd's and Shield in only their official capacities. Id. He seeks $350,000,000 for a false sentence, and he separately asks for an additional $350,000,000. Id. at 7. He requests that charges be brought against defendants and that he be released from custody. Id. Any further relief Wolf Guts seeks is illegible.

**B.    Legal Standard**

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief

may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**C.      Discussion**

Wolf Guts does not clearly identify what claims he seeks to bring. On his complaints, he did not check the box indicating that his claims fall under 42 U.S.C. § 1983 or Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Instead, on the "Other" line, Wolf Guts simply wrote that he filed a lawsuit. This Court nonetheless will liberally construe Wolf Guts' complaints.

**1.      Individual Capacity Claims**

"A Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." Buford v. Runyon, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). All defendants are or are employed by a federal entity or agency. 3:24-CV-03007-RAL Doc. 1 at 2; 3:24-CV-03009-RAL Doc. 1 at 2; 4:24-CV-04054-RAL Doc. 1 at 2; 5:24-CV-05015-RAL Doc. 1 at 2. Thus, this Court liberally construes Wolf Guts' individual capacity claims against defendants as Bivens claims.

"Because Bivens suits are suits brought against government officials in their individual, rather than their official capacities, 'personal jurisdiction is necessary to maintain a Bivens claim.'" Cornell v. Kellner, 539 F. Supp. 2d 311, 314 (D.D.C. 2008) (quoting Robertson v. Merola, 895 F. Supp. 1, 3 (D.D.C. 1995)); see also Ricketts v. Maggard, 2019 WL 8198093, at *4–5 (D. Minn. Dec. 16, 2019) (recommending dismissal of Bivens claims against USMCFP employee because of lack of personal jurisdiction), R&R adopted by 2020 WL 1169357 (D. Minn. Mar. 11, 2020)). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof[.]"

Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). Although personal jurisdiction is an affirmative defense, the United States Court of Appeals for the Tenth Circuit held that "a district court may, in certain limited circumstances . . . dismiss under § 1915 for lack of personal jurisdiction and for improper venue, as well as for affirmative defenses." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006); see also Sanders v. United States, 760 F.2d 869, 871–72 (8th Cir. 1985) (per curiam) (affirming dismissal of claim on screening under § 1915(e)'s predecessor based on lack of personal jurisdiction).

A court's exercise of personal jurisdiction over a defendant must be proper under the forum state's long arm statute and comport with due process. See Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010); see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 108 (1987) (holding federal courts should look to the long arm statutes of the forum state when a federal statute does not provide service of process). Because South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause, the question becomes whether asserting personal jurisdiction over defendants comports with due process. See Ventling v. Kraft, 161 N.W.2d 29, 34 (S.D. 1968). "Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 474–77 (1985)). "In giving content to that formulation, the Court has long focused on the nature and extent of the defendant's relationship to the forum State." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021) (cleaned up and citation omitted). This focus has led to the recognition of two kinds of personal jurisdiction: specific jurisdiction and general jurisdiction. Id.

A court may exercise specific jurisdiction over a defendant when the cause of action arises from a defendant's contacts with the forum state. Wells Dairy, Inc., 607 F.3d at 518. General jurisdiction is proper when the defendant's contacts with the forum state are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). An individual is "at home" in his or her place of domicile. Ford Motor Co., 592 U.S. at 358–59. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017) (citation omitted).

Here, Wolf Guts does not allege that the defendants sued in their individual capacity—County, Dr. Harr, Dr. Hampton, BOP Phd's, and Shield—engaged in any conduct in South Dakota such that they would reasonably anticipate being haled in South Dakota. Wolf Guts appears to allege that any conduct by any defendant occurred in Missouri or Arizona. Thus, he has not alleged any facts to support specific jurisdiction over the individual defendants in South Dakota. Wolf Guts also has failed to allege facts supporting general jurisdiction because none of the allegations support that defendants are domiciled in South Dakota. Wolf Guts' allegations do not justify exercising personal jurisdiction over the individual defendants in South Dakota.[8] Thus, Wolf Guts'

---

[8] Even if this Court could transfer Wolf Guts' complaints to where personal jurisdiction is proper under 28 U.S.C. § 1631, transfer would not be in the interests of justice. Wolf Guts has had at least nine prior cases dismissed or transferred for lack of personal jurisdiction, improper venue, or other reasons related to filing in the wrong court, and some of those cases involve the same issues alleged in his current complaints. See 3:21-CV-03026-RAL; 3:21-CV-03028-RAL; 4:21-CV-04213-RAL; 4:21-CV-04214-RAL; 4:21-CV-04215-RAL; 5:22-CV-05009-RAL; Wolf Guts v. County, 6:19-CV-03313-MDH (W.D. Mo.); Wolf Guts v. County, 6:19-CV-03299-MDH (W.D. Mo.); Wolf Guts v. County, 6:19-CV-03284-MDH (W.D. Mo.).

individual capacity Bivens claims against County, Dr. Harr, Dr. Hampton, BOP Phd's, and Shield are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).[9]

Wolf Guts also sues BOP and DOJ. However, Bivens claims are not actionable against federal agencies. FDIC v. Meyer, 510 U.S. 471, 486 (1994). Thus, Wolf Guts' Bivens claims for money damages against BOP and DOJ are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii).

### 2. Official Capacity Claims

Claims brought against federal employees in their official capacities are equivalent to claims against the United States. Buford, 160 F.3d at 1203; Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985).

#### a. Money Damages

"[S]overeign immunity shields the Federal Government and its agencies from suit." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (alteration in original) (quoting FDIC, 510 U.S. at 475). Although Congress may waive the United States' sovereign immunity, id., "[a]bsent an express waiver of sovereign immunity, money awards cannot be imposed against the United States." McBride v. Coleman, 955 F.2d 571, 576 (8th Cir. 1992). "[A] Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity." Buford, 160 F.3d at 1203.

---

[9] Even if the individual defendants were subject to personal jurisdiction in the District of South Dakota, some of Wolf Guts' claims for money damages would likely be barred under Heck v. Humphrey, 512 U.S. 477 (1994), because money damages are only available for an allegedly unconstitutional imprisonment or other harm that would render a sentence invalid if the plaintiff has shown that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. 486–87; see also Washington v. Sorrows, 107 F.3d 876 (civil table), 1997 U.S. App. LEXIS 3044, at *2 (8th Cir. Feb. 21, 1997) (applying Heck to a Bivens claim).

Even if this Court liberally construed Wolf Guts' official capacity claims for money damages to be claims under the Federal Tort Claims Act (FTCA), Wolf Guts would fail to state a claim upon which relief may be granted. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). To exhaust, the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail" or the agency must have failed to make a final decision within six months after the claim was filed. 28 U.S.C. § 2675(a). See also 28 C.F.R. §§ 543.30–543.32 (explaining requirements to exhaust claim with BOP). "Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993); D. L. v. Vassilev, 858 F.3d 1242, 1244 (9th Cir. 2017) (citation omitted). Wolf Guts does not allege that he presented a claim to the appropriate agency. Thus, Wolf Guts has failed to state an FTCA claim. See Sanders, 760 F.2d at 872 (affirming dismissal of an FTCA claim on screening under § 1915(e)'s predecessor because USMCFP inmate did not indicate in his complaint that he filed an administrative claim with the BOP before filing suit).

Further, this Court would not have jurisdiction under the Tucker Act. "The defense of sovereign immunity blocks suits against the United States for money damages in excess of $10,000.00 unless brought in the Court of Claims under the Tucker Act, 28 U.S.C. §§ 1346 and 1491." Moessmer v. United States, 613 F. Supp. 336, 338 (E.D. Mo. 1985) (citing Clark v. United States, 596 F.2d 252, 253 (7th Cir. 1979)).

Because Wolf Guts has not alleged any claims against the United States for money damages that survived § 1915 screening, his official capacity claims for money damages are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii).

### b. Injunctive Relief

Wolf Guts requests injunctive relief ordering that (1) the threat be removed related to his nose injury, (2) he be released from confinement, and (3) charges be brought against defendants. 3:24-CV-03007-RAL Doc. 1 at 7; 3:24-CV-03009-RAL Doc. 1 at 7; 4:24-CV-04054-RAL Doc. 1 at 7; 5:24-CV-05015-RAL Doc. 1 at 7. The Administrative Procedures Act (APA) states:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . ."

5 U.S.C. § 702. Courts are split on whether the APA permits injunctive relief against a federal agency under Bivens. See Benetti v. U.S. Marshal Serv., 5:22-CV-05038-KES, 2023 WL 5485995, at *3 (D.S.D. Aug. 24, 2023) (collecting cases). Even if the APA does permit injunctive relief against a federal agency under Bivens, this Court is unable to grant any of Wolf Guts' requested injunctive relief that is legible.

### (i) Injunctive Relief for Actions at USP Tucson

Wolf Guts appears to seek injunctive relief removing the threat from when he was incarcerated at USP Tucson. 3:24-CV-03007-RAL Doc. 1 at 7. An "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); see also Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). Wolf Guts claims that he completed his sentence at USP Tucson and is no longer incarcerated at USP Tucson. Thus,

his claims seeking injunctive relief removing the threat for his nose injury at USP Tucson are moot and dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### (ii)  Release from Confinement

Wolf Guts requests that he be released from USMCFP. 3:24-CV-03007-RAL Doc. 1 at 7; 4:24-CV-04054-RAL Doc. 1 at 7; 5:24-CV-05015-RAL Doc. 1 at 7. Courts have held that release from civil commitment cannot be pursed in a civil rights action. Inko-Tariah v. N.C. Relay Serv., 2018 U.S. Dist. LEXIS 173448, at *7–8 (E.D.N.C. Oct. 9, 2018) ("Plaintiff cannot obtain release from civil commitment in this civil rights action." (citations omitted)); Timms v. Johns, 627 F.3d 525, 531–32 (4th Cir. 2010) (person civilly committed can only pursue release in his civil commitment proceeding or through petition for writ of habeas corpus after exhausting alternative remedies); Ballard v. Wong, 2016 U.S. Dist. LEXIS 46798, *7–9 (E.D. Cal. Apr. 5, 2016) (noting that a plaintiff cannot challenge civil commitment proceedings through a Bivens action), R&R adopted by 2:12-CV-02226-JAM-CMK Doc. 38 (E.D. Cal. Aug. 25, 2016); Johnson v. Klein, 2025 U.S. Dist. LEXIS 73879, at *4 (D. Minn. Mar. 11, 2025) ("But individuals cannot challenge their civil commitment through standard civil lawsuits. Instead, they must use habeas corpus or another statutory procedure."), R&R adopted by 2025 U.S. Dist. LEXIS 73029 (D. Minn. Apr. 17, 2025). See also Carter v. Bickhaus, 142 F. App'x 937, 938 (8th Cir. 2005) (per curiam) (holding that release of a person civilly committed in a state proceeding was not available under 42 U.S.C. § 1983 and should be sought under habeas corpus under Preiser, 411 U.S. at 487–90).

For reasons this Court has explained in prior cases brought by Wolf Guts, even if Wolf Guts' claims were construed as a habeas petition, a petition under 28 U.S.C. § 2241 would not be proper in South Dakota because he is not in custody in South Dakota. See 3:17-CR-30059-RAL Doc. 54 at 8. Likewise, Wolf Guts cannot properly file a motion under 28 U.S.C. § 2255 in the

District of South Dakota because he is not detained based on a sentence entered by this Court and because his time for filing such a motion to challenge his old District of South Dakota sentence has lapsed. 3:17-CR-30059-RAL Doc. 54 at 9. Besides, Wolf Guts has a pending motion for conditional release in the Western District of Missouri, where he was civilly committed. 6:19-CV-03168-MDH Doc. 28.

### (iii)   Charges Against Defendants

Wolf Guts requests that criminal charges be brought against defendants. 3:24-CV-03009-RAL Doc. 1 at 7; 4:24-CV-04054-RAL Doc. 1 at 7; 5:24-CV-05015-RAL Doc. 1 at 7. Because the decision of whether to prosecute and what charges to file generally rest in the prosecutor's discretion, this Court does not have authority or discretion to institute criminal proceedings. United States v. Batchelder, 442 U.S. 114, 124 (1979); Parkhurst v. Tabor, 569 F.3d 861, 867 (8th Cir. 2009); Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 379–80 (2d Cir. 1973); Cragoe v. Maxwell, Civ. No. 11–4188, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) ("If [plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings." (citation omitted)).

Because this Court is unable to award any injunctive relief that Wolf Guts seeks in the portions of his complaints that are legible, Wolf Guts' official capacity claims for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). If there was some different form of injunctive relief Wolf Guts seeks within the jurisdiction of this Court to consider and potentially award, he may file another action, though it seems as if his current claims belong outside of the District of South Dakota.

### III.   Conclusion

Accordingly, it is

ORDERED that Wolf Guts' motions for leave to proceed in forma pauperis (3:24-CV-03007-RAL Doc. 2; 3:24-CV-03009-RAL Doc. 2; 4:24-CV-04054-RAL Doc. 2; and 5:24-CV-05015-RAL Doc. 2) are granted. It is further

ORDERED that Wolf Guts' individual capacity Bivens claims against County, Dr. Harr, Dr. Hampton, BOP Phd's, and Shield are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Wolf Guts' individual capacity Bivens claims for money damages against BOP and DOJ are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii). It is further

ORDERED that Wolf Guts' official capacity claims for money damages are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii–iii). It is finally

ORDERED that Wolf Guts' official capacity claims for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

DATED May 20th, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE